THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANI PINSON | ) | CASE NO. |
| 8306 Cedar Avenue | ) | |
| Cleveland, Ohio 44103 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| TAPESTRY WICKLIFFE SENIOR | ) | |
| HOUSING MANAGEMENT, LLC | ) | **Jury Demand Endorsed Herein** |
| dba Tapestry Senior Living - Wickliffe | ) | |
| 28500 Euclid Avenue | ) | |
| Wickliffe, Ohio 44092 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Tapestry Wickliffe Senior Housing | ) | |
| Management, LLC | ) | |
| c/o Paracorp, | ) | |
| 4568 Mayfield Road #204 | ) | |
| Cleveland, Ohio 44121 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| TAPESTRY WICKLIFFE, LLC | ) | |
| dba Tapestry Senior Living - Wickliffe | ) | |
| 25800 Euclid Avenue | ) | |
| Wickliffe, Ohio 44092 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Tapestry Wickliffe, LLC | ) | |
| c/o Paracorp, | ) | |
| 4568 Mayfield Road #204 | ) | |
| Cleveland, Ohio 44121 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| TAPESTRY COMPANIES, LLC | ) | |
| c/o Paracorp Incorporated, | ) | |
| 2140 S. Dupont Hwy | ) | |
| Camden, DE 19934 | ) | |
| | ) | |
| Defendants. | ) | |

1

Plaintiff, Tiffani Pinson, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## PARTIES, JURISDICTION, & VENUE

1. Pinson is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Tapestry Wickliffe Senior Housing Management, LLC is a foreign limited liability company that operates a business located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

3. Tapestry Wickliffe, LLC is a foreign limited liability company that operates a business located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

4. Tapestry Companies, LLC is a foreign limited liability company that operates a business located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

5. At all times herein, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC (collectively "Tapestry" and/or Defendants) owned, leased, managed, operated and/or controlled Tapestry Senior Living – Wickliffe, an assisted living facility located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

6. Upon information and belief, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC share common offices, have common record keeping, and share certain equipment.

7. Upon information and belief, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC share common management, directors, and Members/Managers.

8. Upon information and belief, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC control daily operations of Tapestry

Senior Living – Wickliffe, an assisted living facility located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

9. Upon information and belief, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC maintain financial control over Tapestry Senior Living – Wickliffe, an assisted living facility located at 28500 Euclid Avenue, Wickliffe, Ohio 44092.

10. Upon information and belief, Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC share common ownership.

11. Tapestry Wickliffe Senior Housing Management, LLC, Tapestry Wickliffe, LLC, and Tapestry Companies, LLC are so interrelated that they actually constitute a single integrated enterprise and constitute a joint employer under Ohio law.

12. At all times herein, Pinson was jointly employed by Defendants or together as "Tapestry".

13. Tapestry was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq.* and R.C. § 4112.01 *et seq.*

14. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Pinson is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.*

15. This Court has supplemental jurisdiction over Pinson's state law claims pursuant to 28 U.S.C. § 1367 as Pinson's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. All material events alleged in this Complaint occurred in county of Lake.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

18. Within 300 days of the conduct alleged below, Pinson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01141 against Tapestry operating at 28500 Euclid Avenue, Wickliffe, OH 44092.

19. On or about March 9, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Pinson regarding the Charges of Discrimination brought by Pinson against Tapestry in EEOC Agency Charge No. 532-2021-01141.

20. Pinson received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

21. Pinson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

22. Pinson has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

23. Pinson is a former employee of Tapestry.

24. Pinson worked as a dietary cook at Tapestry.

25. Pinson is African American.

26. Throughout Pinson's employment with Tapestry, she experienced racist, discriminatory behavior from her coworkers.

27. Joe (Last Name Unknown) is an employee of Tapestry.

28. Joe is the janitor at Tapestry.

29. Joe is Caucasian.

30. In or around July 2020, the fire alarm went off at Tapestry.

31. Pinson and the rest of the kitchen staff made their way outside.

32. Pinson asked Joe why he did not inform her of the fire drill.

33. Joe responded that he did not need to tell "you people" anything. ("You People Comment")

34. Pinson understood the use of the term "you people" from Joe as a reference to African Americans.

35. Pinson was offended by Joe's You People Comment.

36. Pinson believed Joe's You People Comment was race discrimination.

37. Pinson questioned Joe about what he meant by the You People Comment.

38. Joe refused to answer Pinson's questions about the You People Comment.

39. In or around July 2020, Pinson reported Joe's comments to Melissa Schmidt. ("Race Discrimination Complaint")

40. Schmidt is the administrator at Tapestry.

41. Schmidt is Caucasian.

42. Schmidt disregarded Pinson's Race Discrimination Complaint.

43. Schmidt told Pinson that Joe did not have to answer questions from Pinson.

44. Schmidt threatened to fire Pinson for making the Race Discrimination Complaint.

45. Schmidt accused Pinson of being the aggressor in the situation with Joe.

46. Schmidt failed to investigate Pinson's Race Discrimination Complaint.

47. Based on Tapestry policies, Pinson's Race Discrimination Complaints was a significant workplace incident.

48. Tapestry has a policy and practice of fully investigating significant workplace incidents.

49. Tapestry has a policy and practice of getting written statements from all participants to significant workplace incidents.

50. Tapestry has a policy and practice of getting written statements from all witnesses to significant workplace incidents.

51. Tapestry violated its policy and practice of fully investigating significant workplace incidents regarding Pinson's Race Discrimination Complaint.

52. Tapestry violated its policy and practice of getting written statements from all participants to significant workplace incidents regarding Pinson's Discrimination Complaints.

53. Tapestry violated its policy and practice of getting written statements from all witnesses to significant workplace incidents regarding Pinson's Discrimination Complaints.

54. Tapestry's failure to follow its policy and practice of fully investigating significant workplace incidents was an adverse action against Pinson.

55. Tapestry's failure to follow its policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Pinson.

56. Tapestry's failure to follow its policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Pinson.

57. On or about September 1, 2020, Pinson was working in the kitchen at Tapestry.

58. On or about September 1, 2020, Pinson was questioned about her work procedures by coworker Lynn (Last Name Unknown).

59. Lynn is a server at Tapestry.

60. Lynn is Caucasian.

61. Lynn does not supervise Pinson.

62. Lynn asked Pinson why she did not inform Lynn that she was cooking a specific meal.

63. Pinson was confused because her job duties do not include informing the serving staff when she is cooking.

6

64. Lynn gave Pinson instructions about how to do her job.

65. Lynn implied that she was supervising Pinson.

66. Pinson asked Lynn to leave her alone and not to speak to her anymore.

67. Pinson walked away.

68. After Pinson's interaction with Lynn, Stephanie Snyder approached Pinson.

69. Snyder is lead cook at Tapestry.

70. Snyder is Caucasian.

71. Snyder questioned Pinson about her interaction with Lynn.

72. Snyder asked Pinson "what the problem was."

73. Pinson replied that she did not have a problem.

74. Snyder continued to question Pinson regarding the interaction between her and Lynn.

75. Snyder was upset that Pinson did not subordinate herself to Lynn and Lynn's inappropriate assertion of authority over Pinson.

76. Snyder was upset that Pinson, as an African American woman, had the nerve to refuse to answer questions from a Caucasian woman who was not Pinson's supervisor.

77. Schmidt previously told Pinson in a similar situation that Joe did not have to answer questions from Pinson because Pinson was not Joe's supervisor.

78. Snyder got frustrated with Pinson despite Pinson's repeated explanations that she had no problem with Lynn and that Lynn had approached Pinson with unsolicited instructions about how to perform Pinson's job.

79. Snyder and Pinson engaged in a loud discussion in the kitchen. ("Kitchen Incident")

80. Tabitha Reed is a cook at Tapestry.

81. Reed walked over to the two women and deescalated the situation.

82. After the Kitchen Incident, all employees returned to their respective duties.

83. Later that day, on or about September 1, 2020, Pinson was called into a meeting with Schmidt and Jennifer (Last Name Unknown).

84. Jennifer is an HR representative at Tapestry.

85. Jennifer is Caucasian.

86. Pinson told Jennifer and Schmidt that Lynn approached her in the kitchen and began giving Pinson instructions about how to perform her job duties.

87. Pinson informed both Jennifer and Schmidt of Lynn's condescending tone.

88. Pinson informed both Jennifer and Schmidt that she had walked away from Lynn.

89. Pinson informed Jennifer and Schmidt of Snyder's interrogation of her interaction with Lynn.

90. Pinson informed that Jennifer and Schmidt that Lynn's conduct was racially discriminatory.

91. Pinson informed that Jennifer and Schmidt that Snyder's conduct was racially discriminatory.

92. Following the meeting, Jennifer and Schmidt sent Pinson home for the day.

93. Jennifer and Schmidt sending Pinson home for the day was an adverse action against Pinson.

94. Jennifer and Schmidt sending Pinson home for the day was an adverse employment action against Pinson.

95. Jennifer and Schmidt did not send Lynn home for the day.

96. Jennifer and Schmidt did not send Snyder home for the day.

97. Lynn was not given a verbal warning as a result of the Kitchen Incident.

98. Snyder was not given a verbal warning as a result of the Kitchen Incident.

99. Lynn was not given a written warning as a result of the Kitchen Incident.

100. Snyder was not given a written warning as a result of the Kitchen Incident.

101. Tapestry failed to take any disciplinary action at all against Lynn or Snyder as a result of the Kitchen Incident.

102. An employer's failure to investigate, or take prompt remedial action against discrimination, thus allowing the discrimination to continue, is also an adverse employment action. *Ellis v. Jungle Jim's Mkt., Inc.*, 12th Dist. No. CA2014-12-254, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 39.

103. Tapestry knew that neither Pinson, nor any other Tapestry employee, could successfully perform their duties while faced with a hostile, discriminatory environment.

104. On or about September 2, 2020, Pinson arrived for work at her regularly scheduled shift.

105. On or about September 2, 2020, Schmidt informed Pinson that she was fired.

106. On or about September 2, 2020, Tapestry terminated Pinson's employment.

107. Tapestry told Pinson the reason for her termination was that the investigation conducted into the Kitchen Incident determined that Pinson was the aggressor.

108. Pinson had not been the aggressor.

109. Tapestry had no honest belief that Pinson had been the aggressor.

110. Upon information and belief, Tapestry has a progressive disciplinary policy,

111. Upon information and belief, Tapestry's disciplinary policy calls for escalating levels of discipline for unprofessional infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

112. Pinson did not receive a verbal warning.

113. Pinson did not receive a written warning.

114. Pinson did not receive a second written warning.

115. Tapestry treated Pinson unfavorably compared to similarly situated Caucasian coworkers.

9

116. By terminating Pinson, Tapestry violated its own progressive discipline policy.

117. Tapestry's purported reason for Pinson's termination is pretext for race discrimination.

118. On or about September 2, 2020, Pinson was actually terminated in retaliation for her complaints of race discrimination.

119. Upon information and belief, Tapestry permitted similarly situated, non-African American employees to retain their employment despite having skills and behavior that were similar to or worse than Pinson's.

120. Defendant did not proffer a legitimate non-discriminatory reason for terminating Pinson.

121. Upon information and belief, subsequent to Pinson's termination, Defendants hired a non-African American person to replace Pinson.

122. As a result of Tapestry's discriminatory and retaliatory conduct, Pinson has suffered and will continue to suffer damages.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

123. Pinson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. Pinson was at all times referenced herein a member of a protected class based on her race.

125. Tapestry subjected Pinson to an adverse employment action.

126. Throughout her employment, Pinson was fully qualified and competent to perform her essential job duties.

127. Tapestry treated Pinson less favorably than similarly situated Caucasian employees.

128. Tapestry violated The Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* by discriminating against Pinson due to her race.

129. On or about September 2, 2020, Tapestry terminated Pinson without just cause.

130. At all times material herein, similarly, situated non-African American employees were not terminated without just cause.

131. Tapestry terminated Pinson based on her race.

132. Tapestry violated 42 U.S.C. § 2000e-2 *et seq.* when it terminated Pinson based on her race.

133. Pinson suffered emotional distress as a result of Tapestry's conduct, and is entitled to emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq.*

134. As a direct and proximate result of Tapestry's conduct, Pinson has suffered and will continue to suffer damages, including economic damages and emotional distress.

## **COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01** ***et seq.***

135. Pinson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Pinson was at all times referenced herein a member of a protected class based on her race.

137. Tapestry subjected Pinson to an adverse employment action.

138. Throughout her employment, Pinson was fully qualified and competent to perform her essential job duties.

139. Tapestry treated Pinson less favorably than other similarly situated Caucasian employees.

140. Tapestry violated Ohio Revised Code § 4112.02(A) *et seq.* by discriminating against Pinson based on her race.

141. On or about September 2, 2020, Tapestry terminated Pinson without just cause.

142. At all times material herein, similarly situated non-African American employees were not terminated without just cause.

143. Tapestry terminated Pinson based on her race.

144. Tapestry violated O.R.C. § 4112.01 et. seq. when they terminated Pinson based on her race.

145. Pinson suffered emotional distress as a result of Tapestry's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

146. As a direct and proximate result of Tapestry's conduct, Pinson has suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT III:  RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-2

147. Pinson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

148. As a result of the Tapestry discriminatory conduct described above, Pinson complained to Tapestry about the race discrimination that she was experiencing.

149. Subsequent to Pinson reporting race discrimination to her supervisor, Tapestry labeled Pinson as the "aggressor" of all the reported interactions.

150. Subsequent to Pinson reporting race discrimination to her supervisor, she was threatened with termination for making the Race Discrimination Complaint.

151. Tapestry's actions were retaliatory in nature based on Pinson 's opposition to the unlawful discriminatory conduct.

152. Pinson suffered emotional distress as a result of Tapestry's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

153. As a direct and proximate result of Tapestry's retaliatory discrimination against and termination of Pinson, she suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

154. Pinson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

155. As a result of the Tapestry's discriminatory conduct described above, Pinson complained to Tapestry about the race discrimination that she was experiencing.

156. Subsequent to Pinson reporting of race discrimination to her supervisor, Tapestry labeled Pinson as the "aggressor" of all the reported interactions.

157. Subsequent to Pinson reporting of race discrimination to her supervisor, she was threatened with termination for making the Race Discrimination Complaint.

158. Tapestry's actions were retaliatory in nature based on Pinson 's opposition to the unlawful discriminatory conduct.

159. Pursuant to R.C. § 4112.02 (I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

160. Pinson suffered emotional distress as a result of Tapestry's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

161. As a direct and proximate result of Tapestry's retaliatory discrimination against and termination of Pinson, she suffered and will continue to suffer damages, including economic damages and emotional distress.

## DEMAND FOR RELIEF

WHEREFORE, Pinson respectfully request this Court grant the following:

(a) An order requiring Tapestry to restore Pinson to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Pinson for lost wages, forward damages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Pinson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/Fred M. Bean*
Fred M. Bean (0086756)
David E. Byrnes (0086975)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  Fred. Bean@spitzlawfirm.com
           David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff Tiffani Pinson*

## JURY DEMAND

Plaintiff Tiffani Pinson demands a trial by jury by the maximum number of jurors permitted.

*/s/Fred M. Bean*
Fred M. Bean (0086756)
David E. Byrnes (0086975)
**SPITZ, THE EMPLOYEE'S LAW FIRM**